**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| IN RE:<br><br>Ana Hamahata Alapai Cain,<br><br>Debtor. | C/A No. 15-00079-dd<br><br>Chapter 13<br><br>**ORDER** |
|---|---|

THIS MATTER comes before the Court on a motion requesting an order that the automatic stay is inapplicable to real property ("Motion") filed by creditor Flagstar Bank, FSB ("Flagstar")[1], and the response of debtor Ana Hamahata Alapai Cain ("Debtor"). The Court held a hearing on the Motion April 22, 2015, in combination with the hearing on confirmation of Debtor's proposed chapter 13 plan. After careful consideration of the applicable law, arguments of counsel, and evidence submitted, the Court grants Flagstar's Motion and denies confirmation of the January 16, 2015 plan.

I.    **Facts and Procedural History**

The facts underlying this matter are undisputed. In 1984, the Debtor and her family moved into the residence of her mother-in-law, Carnell Cain ("Carnell"), at 1392 Kennedy Hayes Road, Pamplico, South Carolina ("Property"). Carnell had owned the Property since 1974. Pl.'s Ex. 2, Ex. A. As part of the living arrangement, the Debtor and her family helped Carnell with the household expenses and mortgage payment.[2] In 2009, the Debtor's husband, Edward Cain ("Edward"), moved out of the house to pursue a better job opportunity. Debtor testified that she

---

[1] At the hearing, Flagstar informed the Court that service of the mortgage was transferred to Green Tree Servicing. Counsel for Flagstar represented to the Court that Green Tree Servicing authorized him to continue prosecuting this Motion.

[2] The mortgage at issue here was signed by Carnell in 2004. Pl.'s Ex. 2. The Debtor testified that there were previous mortgages.

1

and Edward were not estranged, that he continues to work in another state, and that he visits monthly. After Edward left, the Debtor took over making the mortgage payments, and Carnell authorized her to speak with Flagstar, the servicer of the mortgage, regarding any mortgage issues. Debtor testified that at that time she became primarily responsible for the Property.

In 2010, Carnell signed a quitclaim deed transferring to the Property to Edward.[3] Pl.'s Ex. 6. Carnell died later that year.[4] The Debtor recalls filing a deed transferring the Property to herself and Edward in 2011, but no deed is of record and no document was offered in evidence. Neither the Debtor nor Edward formally assumed the Flagstar mortgage.

Flagstar began foreclosure proceedings against the Property in March of 2011. Pl.'s Ex. 3. Flagstar named Edward as the defendant in the foreclosure.[5] *Id*. Debtor testified that she knew of the foreclosure proceedings but did not intervene. Later that same year, Debtor filed a chapter 13 bankruptcy petition. Her schedules listed the Property as owned solely by her. Her chapter 13 plan treated the mortgage arrears and was confirmed in early 2012 without objection from Flagstar. That bankruptcy case was dismissed in late 2013 for failure to make payments.

---

[3] Around the time Edward moved out of the house, Carnell allegedly granted Edward her power of attorney and Edward granted the Debtor his power of attorney. Neither of these documents were recorded. S.C. Code Ann. § 62-5-501(C)(2010) (providing for powers of attorney to be recorded "in the same manner as a deed in the county where the principal resides at the time the instrument is recorded"). This deed, as well as the 2015 quitclaim deed, both appear to be executed by the Debtor under the authority of powers of attorney. The powers of attorney were not offered in evidence.

[4] There was no evidence presented concerning state probate proceedings. Counsel for Flagstar stated that Flagstar believes no state court probate proceedings were initiated. Debtor testified that Edward is one of Carnell's five children, and that Carnell also has 10 grandchildren and 10 great-grandchildren, all of whom "have a place to come" at the Property.

[5] Specifically, the foreclosure complaint names as defendant "Any Heirs-at-Law or Devisees of Carnell B. Cain, Deceased, their heirs, Personal Representatives, Administrators, Successors and Assigns, and all other persons entitled to claim through them; all unknown persons with any right, title or interest in the real estate described herein; also any persons who may be in the military service of the United States of America, being a class designated as John Doe; and any unknown minors or persons under a disability being a class designated as Richard Roe.; Edward N. Cain." Flagstar stated at the hearing that it included the heirs of Carnell as defendants because it questioned the validity of the quitclaim deed to Edward executed utilizing an unrecorded power of attorney.

2

Debtor filed this chapter 13 case on January 6, 2015. The same day, roughly 15 minutes after she filed her case, the judicial sales officer conducted a foreclosure sale on the Property. Debtor filed a quitclaim deed two hours later attempting again to transfer the Property from Edward to herself and Edward. She testified that she filed the quitclaim deed because she realized that the Property was only titled in her husband's name. In the schedules filed along with her petition, Debtor lists the Property as held jointly with Edward.

Flagstar filed this Motion requesting the Court determine that the Property is not part of the Debtor's estate, and thus not subject to the automatic stay, because the Debtor is not an obligor under the mortgage, does not hold a valid legal title to the Property, and does not have an equitable interest in the Property sufficient to bring it into the estate. Debtor argues that she holds an equitable interest in the Property by virtue of a constructive trust due to her financial contributions to the Property, continuing residence at the Property, and general belief that she owned the Property prior to discovering the 2011 deed was not recorded.[6]

## II.    Discussion

Section 362 of the Bankruptcy Code provides that the filing of the petition stays all actions, subject to exceptions inapplicable here, "to obtain possession of property of the estate." 11 U.S.C. § 362(a)(3). Property of the estate is broadly defined to encompass "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). A debtor's legal and equitable interests are defined by applicable nonbankruptcy law. *Butner v. U. S.*, 440 U.S. 48, 49 (1979). The parties do not dispute that South Carolina law applies and that the Debtor

---

[6] Debtor had previously argued that judicial estoppel, stemming from Flagstar's acquiescence in her earlier bankruptcy, barred Flagstar from objecting to her asserting an interest in the property now. Debtor abandon this argument at the hearing. *See infra*, note 7.

lacks a legal interest in the Property.[7] The Debtor instead argues that South Carolina law provides her with an equitable interest in the Property by virtue of a constructive trust.

Constructive trusts are equitable creatures that arise "entirely by operation of law without reference to any actual or supposed intentions of creating a trust." *Smith v. S.C. Ret. Sys.*, 520 S.E.2d 339, 352 (S.C. Ct. App. 1999) (quoting *McNair v. Rainsford*, 499 S.E.2d 488, 501 (S.C. Ct. App. 1998)). South Carolina courts recognize constructive trusts when the "circumstances under which property was acquired make it inequitable that [the property] be retained by the one holding legal title." *Macaulay v. Wachovia Bank of S.C., N.A.*, 569 S.E.2d 371, 375 (S.C. Ct. App. 2002) (internal quotation marks omitted). Although these circumstances are generally "fraud, bad faith, abuse of confidence, or violation of a fiduciary duty," *id.*, the form, scope and reasons for imposing a constructive trust "are practically without limit, such trusts being raised, broadly speaking, whenever necessary to prevent injustice." *In re Thames*, 21 B.R. 704, 707 (Bankr. D.S.C. 1981) (citing *Dominick v. Rhodes*, 24 S.E.2d 168, 172 - 73 (S.C. 1943)); s*ee e.g., City of Charleston, S.C. v. Hotels.com, LP*, 520 F.Supp.2d 757, 773 (D.S.C. 2007) (recognizing a potential cause of action for imposing a constructive trust when defendants allegedly "obtained money which does not equitably belong to them" despite no allegations of fraud in the complaint). Courts have imposed constructive trusts when parties mistakenly believe they have an ownership interest and such ownership interest was mistakenly not recorded. *E.g.*, *Thames*, 21 B.R. at 707 (imposing a constructive trust when the wife's name was erroneously omitted from the deed and she had paid half of the purchase price). The burden of proof to establish a constructive trust is "high" and must

---

[7] Prior to the hearing, it appears there was a dispute as to whether the quitclaim deed was filed prior to the foreclosure and whether the foreclosure sale occurred prior to the filing of the petition. At the hearing, counsel for both parties agreed on the timeline set forth above, and counsel for the Debtor conceded that she did not have title to the property, and thus no legal interest.

4

be established by the party seeking the imposition of a constructive trust by "clear, definite, and unequivocal" evidence. *Carolina Park Assocs., LLC v. Marino*, 732 S.E.2d 876, 879 (S.C. 2012).

Bankruptcy courts in this district have explored South Carolina's constructive trust case law, albeit in contexts different than the one currently before this Court. *E.g., In re Blackwell*, C/A No. 98-02748-jw, 1998 WL 2017334, (Bankr. D.S.C. Sept. 2, 1998) (considering, in the context of applying the "best interests of the creditors" test, whether the debtor's father equitably owned property titled in the name of the debtor); *Thames*, 21 B.R. at 707 (considering whether a transfer between two married debtors was fraudulent and concluding that there was no transfer because the property was jointly held by virtue of both resulting and constructive trusts). The Court finds instructive here *In re Wicker*, C/A No. 13-07546-jw, slip op. (Bankr. D.S.C. April 11, 2014) (unpublished). The *Wicker* debtors filed a joint bankruptcy case and claimed exemptions in their personal residence. *Id*. at 2. The chapter 13 trustee objected to the wife's claimed exemption because her name was not on the deed to the property. *Id*. At trial, the wife provided evidence showing that she had contributed $16,000 of her own funds to the property, lived in it with her husband for nearly twenty years, signed two mortgages encumbering her interest in the property, and consistently contributed to monthly mortgage payments. *Id*. at 3. The court concluded that this evidence demonstrated that the wife treated the property as her own, contributed to the property as if she were a one-half owner, and acted upon the belief that she was in fact a one-half owner. *Id*. at 11. The omission of her name on the deed was a mistake equity required the court to correct. *Id*. It was therefore appropriate to impose a constructive trust on the property in favor of the wife so she could claim the exemption. *Id*.

The facts here are distinguishable from those in *Wicker*. The Debtor testified that she knew Carnell owned the property and transferred it to Edward. She knew that she was able to speak to

5

the mortgage company because she was authorized by Carnell. She did not participate or intervene in the foreclosure proceeding despite knowing that it was ongoing and that she was not named as a defendant.[8] She attempted to quitclaim title to herself after she filed for bankruptcy and the foreclosure sale occurred. While the Debtor did financially contribute to the property and treated the Flagstar mortgage in her previous bankruptcy,[9] these other facts indicate she was consistently aware that the property was not hers and that she lacked an ownership interest.

The Court finds the Debtor's lack of participation or intervention in the foreclosure proceeding particularly supportive of this conclusion. The foreclosure proceeding was instituted in March of 2011. The foreclosure judgment was entered September 8, 2011. The foreclosure judgment was supplemented three times before the sale took place in January of this year: August 2012, October 2013, and November 2014. At no point did Debtor contest the foreclosure proceeding or assert ownership over the property. It would be manifestly unjust to permit her to claim an ownership interest now when she previous eschewed defending that same interest in lengthy litigation that she knew of and in which Edward participated.[10]

It is the Debtor's burden to prove to the Court by clear and convincing evidence that equity requires the Court to impose a constructive trust on the Property. The Debtor has not met her burden. Because the Debtor has no equitable or legal interest in the Property, it is not property of

---

[8] Debtor testified that she had appeared at one of the foreclosure hearings but did not contest the foreclosure.

[9] Although Debtor abandon her argument that Flagstar was estopped from contesting her ownership interest because it accepted plan treatment in her earlier bankruptcy, Debtor still implied that Flagstar's acceptance of the treatment and payments was evidence of her equitable interest in the property. The Court disagrees. Additionally, because Debtor's chapter 13 case was dismissed, the parties' positions return to the status quo. *Wells Fargo Bank, N.A. v. Oparaji (In re Oparaji)*, 698 F.3d 231, 238 (5th Cir. 2012); s*ee* 11 U.S.C. § 349(b). Any position Flagstar took in that case is therefore not preclusive with regards to the proceeding currently before the Court.

[10] Debtor testified that Edward bid on the Property at an earlier foreclosure sale in late 2013. Edward made the winning bid and paid a $2,200 deposit. He unsuccessfully attempted to get a 401(k) loan to pay the remainder of the price. The deposit was then forfeited and another sale was scheduled.

the estate and the stay is not applicable. Flagstar's Motion is granted. Confirmation of the January 16, 2015 plan is denied and the Court will enter an appropriate order.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**04/30/2015**



David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina

Entered: 04/30/2015